# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22-03125-01-CR-S-MDH |
| | ) | |
| ROGERIC HANKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM AND
## MOTION FOR DOWNWARD VARIANCE

Comes now Rogeric Hankins, by and through his counsel of record, and pursuant to U.S.S.G. § 5K2.20 and 18 U.S.C. § 3553(a), moves this Court to depart and/or vary downward from the Guidelines and impose a sentence of 84 months' imprisonment and a reasonable term of supervised release. In support of this motion Mr. Hankins submits the following:

**I.** *Case Background*.

Mr. Hankins has not only taken responsibility for his offense, he has also demonstrated he is remorseful, and this conduct is not indicative of what his behavior will be hereafter. We know this because of two pieces of information. First, Mr. Hankins was released on bond November 1, 2022, following his initial appearance before Chief U.S. Magistrate Judge David P. Rush. The Northern District of Mississippi took courtesy supervision of Mr. Hankins' pretrial supervision, as he has been residing with family within

1

that district since his pretrial release. Presentence Investigation Report, "PSR", ¶ 5. Pretrial services records received from that district indicate Mr. Hankins has generally complied with all Court ordered conditions of release, though he was admonished for alcohol use. Id. However, he has been in counseling to ascertan skills to deal with this alcohol addiction. PSR ¶ 54.

Second, at age 37, this is Mr. Hankins' first, and only, felony conviction. PSR ¶¶ 34-36. This offense represents aberrant behavior for him that differs greatly from what his life has otherwise been: law-abiding,[1] hardworking, and dedicated to his family. See PSR 44-46 and 59-63.

These factors support the downward variance requested from the Guidelines range of 120 months, as it is the statutorily authorized maximum sentence for this offense. See U.S.S.G. §5G1.1(a); PSR ¶¶ 67-68. A full examination of the relevant 18 U.S.C. § 3553(a) factors herein demonstrate this is not a situation where the statutory maximum sentence would be reasonable or necessary.

## II.     *18 U.S.C. § 3553(a) Factors*.

Section 3553(a) mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with the" sentencing goals described in subparagraph 2 of that section. In imposing a sentence that is "sufficient, but not greater than necessary," courts are directed to consider the statutory factors listed under § 3553(a).

---

[1] Mr. Hankins acknowledges and does mean to minimize his three cases involving misdemeanor traffic offenses described in PSR ¶¶ 34-36.

Furthermore, the Supreme Court has noted specifically that offenses involving a violation of 18 U.S.C. § 242 encompass a wide range of conduct, necessitating that a sentencing court painstakingly examine the § 3553(a) factors to determine an appropriate sentence. The Court in *Koon v. United States,* 518 U.S. 81 (1996) described this distinction:

> Most Guidelines prescribe punishment for a single discrete statutory offense or a few similar statutory offenses with rather predictable fact patterns. Petitioners were convicted of violating 18 U.S.C. § 242, however, a statute unusual for its application in so many varied circumstances.... A violation of § 242 can arise in a myriad of forms, and the Guideline applicable to the statute applies to any violation of § 242 regardless of the form it takes.

*Koon,* 518 U.S. at 101 (citations omitted). Thus, especially in the case of a violation of § 242, where the Guidelines cannot ensure uniformity and proportionality in the sentence because of the myriad of conduct that can lead to a violation, the "sentencing judge [should] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States,* 128 S.Ct. 586, 598 (2007) (citing *Koon,* 518 U.S. at 113).

### A. *The nature and circumstances of the offense compared to other types of conduct under the statute.*

Mr. Hankins' offense, violating the victim's civil rights resulting in bodily injury, was an isolated occurrence. Mr. Hankins' conduct was also no more egregious than other similarly situated defendants convicted of similar offenses whose sentences were much less than 120 months.

In *Koon*, the Supreme Court upheld a district court's decision to depart downward from a Guidelines range sentence for the police officers convicted of violating Rodney

3

King's civil rights resulting in bodily injury. There, the district court imposed a sentence of 30 months' imprisonment as to Defendant Koon, even though the Guidelines recommended a range of 70 to 87 months. *Id.* at 89. The relevant conduct underlying the violation of § 242 resulting in bodily injury was:

> As the videotape begins, it shows that King rose from the ground and charged toward Officer Powell. Powell took a step and used his baton to strike King on the side of his head. King fell to the ground. From the 18th to the 30th second on the videotape, King attempted to rise, but Powell and Wind each struck him with their batons to prevent him from doing so. From the 35th to the 51st second, Powell administered repeated blows to King's lower extremities; one of the blows fractured King's leg. At the 55th second, Powell struck King on the chest, and King rolled over and lay prone. At that point, the officers stepped back and observed King for about 10 seconds. Powell began to reach for his handcuffs.
>
> At one-minute-five-seconds... on the videotape, Briseno, in the District Court's words, 'stomped' on King's upper back or neck. King's body writhed in response. At 1:07, Powell and Wind again began to strike King with a series of baton blows, and Wind kicked him in the upper thoracic or cervical area six times.... At about 1:29, King puts his hands behind his back and was handcuffed....
>
> King was taken to a hospital where he was treated for a fractured leg, multiple facial fractures, and numerous bruises and contusions.

*Id.* at 86-87 (emphasis added).

In *United States v. LaVallee,* 439 F.3d 670 (10th Cir. 2006), the Tenth Circuit upheld the downward departure sentence of 30 months as reasonable for a correctional officer convicted of violating § 242, resulting in bodily injury of an inmate. The relevant conduct underlying the conviction consisted of the severe beating inflicted upon an inmate:

> Testimony at trial demonstrated that Howard Lane, a USP-Florence prisoner, wrote several letters containing sexually explicit remarks to a female USP-Florence officer. After the discovery of the letters, Mr. Verbickas escorted

> Mr. Lane to Captain Hine's office, where the Captain told Mr. Verbickas and Mr. Britt to 'take this piece of s*** down to SHU and give him a treatment…'
>
> When the trio arrived at the SHU, Ms. Gutierrez opened a cell door as the other officers escorted Mr. Lane inside. Mr. Britt returned to the officers' station.
>
> [Defendant] Verbickas punch[ed] [prisoner] while he was standing against the wall of the cell, his hands still restrained behind his back.... [Defendant] then placed him on the floor and... kicked him in the ribs so as to avoid leaving visible injuries and the concomitant need to file an incident report. [Defendant] then grabbed [prisoner] by his collar and the seat of his pants, lifted him waist high, and dropped him on his face. Blood oozed from [prisoner's] lip. Finally, [defendant] threw Mr. Lane up against the wall, leaving a blood stain. Because [prisoner] suffered visible facial injuries as a result of the beating, the officers discussed how they would falsify their incident reports to avoid an investigation.

*Id.* at 678-79 (emphasis added).

Mr. Hankins' offense conduct was not more serious than the above-described brutal beatings inflicted upon prisoners by law enforcement officers. While the force used in *Koon* and *LaVallee* collectively resulted in blood oozing from a victim's face, blood stains on the prison wall, visible facial injuries, fractured bones, multiple facial fractures, and numerous bruises and contusions, the resulting injuries in this case were not more extensive. See PSR ¶ 14.[2] Also, Mr. Hankins accepted responsibility for his offense conduct as opposed to going to trial and forcing the victim to testify and be cross-examined as the defendants did in the comparisons above.

---

[2] Mr. Hankins in making these comparisons is in no way attempting to minimize the physical or mental injuries to the victim. He is making these comparisons because they are relevant to this Court's application of the § 3553(a)(6) factor to "…avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

5

### B. *The Court should depart or grant a variance because Mr. Hankins' conduct represents aberrant behavior.*

Mr. Hankins requests a downward departure or variance sentence because this is Mr. Hankins' first felony conviction and represents aberrant conduct, in addition to the other factors discussed. Mr. Hankins' only law violations in his 37 years are: 1) at age 24, he was convicted of (4) traffic violations related to a misdemeanor driving while intoxicated occurrence; 2) at age 28, he was convicted of speeding and an open container violation; and 3) at age 29, he was convicted of a "disregard for traffic" offense. These convictions resulted in a criminal history score of zero and a classification of category one (1). See PSR ¶¶ 34-36.

Mr. Hankins acknowledges that two of these occurrences involved the use or possession of alcohol. This is an addiction he has sought and will continue to seek counseling for in the future. See PSR ¶¶ 52-56. His efforts are genuine, and he has been able to limit his alcohol use while on pretrial release and has made significant progress as to his addiction during this time through counseling. PSR ¶¶ 5 and 54.

Additionally, the infractions and misdemeanors in PSR ¶¶ 34-36 are not felonious conduct and are not similar to the offense conduct herein. As a policy statement, the Sentencing Commission encourages departures based on aberrant behavior where "the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20. Furthermore, this Court need not rely alone on the strict test set out by the

6

Sentencing Commission to find this departure provision applicable to Mr. Hankins, but may, in this *Post-Booker*[3] sentencing regime, treat the aberrant behavior of the defendant as a § 3553(a) factor in imposing a downward variance sentence.

In *La Vallee,* the Tenth Circuit upheld a downward departure based upon aberrant behavior for a prison guard convicted of violating the civil rights and causing bodily injury to an inmate. *LaVallee,* 439 F.3d at 701. The court held:

> The aberrant behavior exception may apply in an exceptional case when 'the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. The conduct for which Mr. Verbickas was convicted meets the three requirements of § 5K2.20(b), and there is substantial evidence in the record that this was also an exceptional case, thus warranting a departure.

*Id.* at 708 (citations omitted). There, the court found the aberrant behavior departure applied, even though the prison guards had a history of abusive behavior, it was a multi-person coordinated assault, it was carried out pursuant to a pre-planned "treatment" regime, and the defendant and other guards filed a false report in an attempt to cover up the severe beating of the victim. *Id.* at 679.

The factors required by § 5K2.20(b) are met here. There is no evidence of significant planning by Mr. Hankins, the offense conduct was of limited duration (less than 96 hours), and he has no other similar conduct in his criminal history. See PSR ¶¶ 6-13 and 34-36. Moreover, none of the prohibitions in § 5K2.20(c) are present that would preclude

---

[3] *Booker v. United States,* 543 U.S. 220 (2005).

application of the departure provision.

Other factors also support the conclusion that this behavior was aberrant. Mr. Hankins has no prior felony or violent convictions, extensive employment history, he provides emotional and financial support for his 13-year-old autistic son, and he provides support for his mother whom he has resided with while on pretrial release. See PSR ¶¶ 45 and 59-62.

> C. *Mr. Hankins' status as a former law enforcement officer in a highly publicized case involving a violation of a prisoner's rights, suggests that a departure or variance is warranted.*

Mr. Hankins asks the Court to consider as a § 3553(a) factor his status as a former law enforcement officer. His status will likely necessitate that his custody is in solitary confinement or restricted in other ways for his protection. In *Koon,* the Supreme Court held that "[t]he Court of Appeals did not dispute, and neither do we, the District Court's finding that '[t]he extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers, make Koon and Powell unusually susceptible to prison abuse.'" *Koon,* 518 U.S. at 112. Although Mr. Hankins does not suggest that his case received even close to the notoriety that *Koon* did, his case was reported nationally[4]

---

[4] See https://news.yahoo.com/prisoner-transport-officer-pleads-guilty-105100298.html; https://www.foxnews.com/us/federal-prison-transport-guard-pleads-guilty-sexually-assaulting-detainee; https://www.prisonlegalnews.org/news/2023/jan/1/news-brief/; https://globeecho.com/news/north-america/united-states/federal-prison-transport-guard-pleads-guilty-to-sexually-assaulting-detainee/; https://www.twincities.com/2023/04/14/transport-driver-raped-inmate-en-route-to-ramsey-county-jail-lawsuit-says/; https://www.joplinglobe.com/news/prisoner-transport-officer-pleads-guilty-to-sexual-assault-in-joplin/article_a014c9b4-5a29-11ed-8504-535d022c4a21.html; https://www.justice.gov/opa/pr/former-prisoner-transport-officer-

and he offers this holding to substantiate that the Supreme Court upheld the susceptibility of prison abuse as a factor that could mitigate a defendant's sentence.

In *La Vallee,* the Tenth Circuit upheld a downward departure of two offense levels where the district court "determined that the defendant was especially susceptible to abuse in prison." *La Vallee,* 439 F.3d at 701 The Court held that:

> The fact that police officers are susceptible to abuse in prison does not, alone, warrant a downward departure.... However, when a district court determines that the defendants' susceptibility to abuse is compounded by 'widespread publicity and emotional outrage ... [this] is just the sort of determination that must be accorded deference by the appellate courts.'

*Id.* at 708 (citations omitted).

Here, Mr. Hankins' status as a former law enforcement officer and inmate transporter and his offense conduct has been much publicized.[5] Accordingly, any punishment that Mr. Hankins receives involving imprisonment will be more severe than the punishment of a typical inmate, as he will need to serve his sentence in solitary confinement or conditions away from the general population.[6]

In this vein, general population is less restrictive and punitive than incarceration in

---

pleads-guilty-sexually-assaulting-female-detainee;
https://twitter.com/davenewworld_2/status/1588001016078909440?lang=en.

[5] See fn. 3.
[6] See Haney, C., The psychological effects of solitary confinement: a systematic critique, *Crime Justice.* 2018;47(1):365–416; Morgan R.D., Smith P., Labrecque, R.M., et al., Quantitative syntheses of the effects of administrative segregation on inmates' well-being, *Psychol Public Policy Law.* 2016;22(4):439–461; and O'Keefe, M.L., Klebe, K.J., Metzner, J., Dvoskin, J., Fellner, J., Stucker, A., A longitudinal study of administrative segregation, *J. Am. Acad. Psychiatry Law.* 2013;41(1): 49–60.

9

solitary or protective confinement, especially if it is for the entirety of a sentence. The sentencing Guidelines merely consider general incarceration. Mr. Hankins posits therefore that a defendant who will be placed in solitary or protective confinement by the nature of his characteristics should receive less time because of the harsher conditions. To find otherwise would be against the well-regarded sentencing goal of proportionality.[7]

> **D.** *The need to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.*

A sentence of 84 months' imprisonment that includes mental health treatment, sex offender treatment, and continued alcohol counseling followed by a term of supervised release will meet the need to protect the public from the unlikely possibility of Mr. Hankins committing further offenses.

In addition to a sentence of imprisonment, this Court must order a sentence of supervised release of not more than three years with conditions, which will allow the addiction counseling begun during pretrial release, and to be furthered at the Bureau of Prisons, to continue. See PSR ¶¶ 70-71. Additionally, Mr. Hankins must register as a sex offender for life. See PSR ¶ 74(i). Thus, Mr. Hankins will be supervised in some manner for the remainder of his life. The counseling and training Mr. Hankins will receive before

---

[7] In citing to *Harmelin v. Michigan,* 501 U.S. 957, 1005 (1991), the Supreme Court in *Graham v. Florida*, 560 U.S. 48, 60 (2011) directed courts to begin by "comparing the gravity of the offense and the severity of the sentence," and "[i]n the rare case in which [this] threshold comparison leads to an inference of gross disproportionality the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions."

10

Case 6:22-cr-03125-MDH    Document 25    Filed 07/06/23    Page 10 of 11

release from a sentence of 84 months will meet the goals of sentencing, and specifically, the need to protect the public from further crimes.

### III. *Conclusion.*

Based on the arguments set forth herein, Mr. Hankins submits that a downward departure and/or variance pursuant to U.S.S.G. § 5K2.20 or 18 U.S.C. § 3553(a) to a sentence of 84 months' imprisonment will accomplish the goals of sentencing in this case.

Respectfully submitted,

*/s/ Ian A. Lewis*
**IAN A. LEWIS, #52819**
Assistant Federal Public Defender
901 St. Louis Street, Suite 801
Springfield, Missouri 65806
(417) 873-9022
Attorney for Defendant

July 6, 2023

### CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Ian A. Lewis*
**IAN A. LEWIS**